1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARTIN LINVILLE,                          No.  2:22-cv-0057 DJC AC P

12                 Petitioner,

13        v.                                    FINDINGS AND RECOMMENDATIONS

14   GISELLE MATTESON, Warden,

15                 Respondent.

16

17        Petitioner is a California state prisoner proceeding pro se with an application for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on a petition challenging

19   petitioner's 2017 conviction and sentence for voluntary manslaughter and assault with a firearm.

20   ECF No. 7.  Respondent has answered, ECF No. 20, and petitioner has filed a traverse, ECF No.

21   24.

22                                    BACKGROUND

23   I.      Proceedings in the Trial Court

24        A.  Overview

25        Petitioner was originally charged by felony complaint in Siskiyou County with murder.

26   After the preliminary hearing, the complaint was replaced by an information alleging two counts:

27   murder and assault with a firearm.  Firearm enhancements were alleged as to both counts.

28   Petitioner later pled no contest to both counts of an amended information that retained the charge

1    of assault with a firearm, charged voluntary manslaughter instead of murder, and replaced the

2    enhancement under Cal. Penal Code § 12022.53 with a less severe enhancement under section

3    12022.5.

4         B.  Evidence Presented at the Preliminary Hearing[1]

5         Around 1:46 a.m. on June 2, 2017, Siskiyou County Sheriff's Deputy Jared

6    Brodjeski was dispatched to a rural residence in Hornbrook, in response to a 911 call

7    placed by petitioner.  In the call, petitioner said he had shot his friend with the friend's

8    gun after the friend had pulled the gun on him; he took the gun from the friend.

9    Petitioner said he was sorry.

10        The deputy found petitioner standing in the driveway with his hands up.  Petitioner had

11   dried blood on his hands and shin, and emanated a strong odor of alcohol.  After detaining

12   petitioner, the deputy saw a male, later identified as David Ralph Casper, lying on his back on the

13   front porch, apparently deceased.  Investigator determined that Casper had lived in the residence

14   and petitioner had been staying in  trailer on the property.

15        Casper had a black eye under his left eye, dried blood on his forehead, and bruising on his

16   arms.  He also had two bullet wounds: an entry wound in the right knee area and a wound in the

17   right pectoral area.  A .22-caliber revolver loaded with nine shell casings was found on a lawn

18   chair on the porch beside Casper's body.  Seven of the shell casings had been fired.

19        Petitioner told the deputies at the scene that the blood on his person was "Ralph's

20   blood."  He asked a detective if Casper was dead.  The detective said he was, then

21   advised petitioner of his rights.  Petitioner said he did not mean to kill Casper, but Casper had

22   pulled a gun, which petitioner got away from him.  Petitioner also said: "I beat the shit out of him

23   and then I shot him."

24        Searching the residence, detectives found blood and a clump of Casper's hair on a

25   living room rug, along with signs a struggle had taken place there.  A detective concluded

26

27   [1]  This factual summary is adapted from the opinion of the California Court of Appeal, ECF No.
     21-7 at 2-4.  The evidence presented at the preliminary hearing provided the factual basis for

28   petitioner's plea.

1  that Casper's body had been dragged outside from the living room.  He ultimately found

2  evidence bullets were fired inside the residence.

3      An autopsy found a bullet in Casper's spine and a through-and-through wound in

4  his right knee area, along with significant bruising to his face.  The pathologist opined

5  that the gunshot wound to Casper's chest caused his death.  At the time of death, Casper's

6  blood-alcohol level was 0.38 percent.

7      C.   The Plea Agreement

8      Petitioner pleaded no contest to Count 1 (manslaughter) and admitted the associated

9  firearm enhancement pursuant to People v. West, 3 Cal.3d 595 (1970).  The plea agreement

10 provided that the sentencing "lid" was 10 years, sentence on Count 2 would either be

11 stayed under section 654 or run concurrent to Count 1, the firearm enhancement on Count

12 2 would be dismissed, and defendant could argue at sentencing for probation and for

13 striking the firearm enhancement on Count 1.

14     D.   Sentencing

15     The trial court denied probation, denied petitioner's motion to strike the firearm

16 enhancement, and imposed the maximum sentence permitted under the plea agreement: a ten year

17 prison sentence on Count One (the six-year middle term for manslaughter plus the four-year

18 middle term for the firearm enhancement), with a three-year concurrent term on Count

19 Two.

20 II.     Post-Conviction Proceedings

21     Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of

22 conviction on October 9, 2020.  ECF No. 21-7.  The California Supreme Court denied review on

23 December 16, 2020.  ECF No. 21-9.

24     Petitioner filed no applications for collateral relief in state court.

25          STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

26     28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of

27 1996 ("AEDPA"), provides in relevant part as follows:

28 ////

3

1
2
3

    (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

4

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

5
6
7

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

8

    The statute applies whenever the state court has denied a federal claim on its merits,

9

whether or not the state court explained its reasons.  Harrington v. Richter, 562 U.S. 86, 99

10

(2011).  State court rejection of a federal claim will be presumed to have been on the merits

11

absent any indication or state-law procedural principles to the contrary.  Id. (citing Harris v. Reed,

12

489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a

13

decision appearing to rest on federal grounds was decided on another basis)).  "The presumption

14

may be overcome when there is reason to think some other explanation for the state court's

15

decision is more likely."  Id. at 99-100.

16

    The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

17

principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538

18

U.S. 63, 71-72 (2003).  Only Supreme Court precedent may constitute "clearly established

19

Federal law," but courts may look to circuit law "to ascertain whether…the particular point in

20

issue is clearly established by Supreme Court precedent."  Marshall v. Rodgers, 569 U.S. 58, 64

21

(2013).

22

    A state court decision is "contrary to" clearly established federal law if the decision

23

"contradicts the governing law set forth in [the Supreme Court's] cases."  Williams v. Taylor, 529

24

U.S. 362, 405 (2000).  A state court decision "unreasonably applies" federal law "if the state

25

court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to

26

the facts of the particular state prisoner's case."  Id. at 407-08.  It is not enough that the state court

27

was incorrect in the view of the federal habeas court; the state court decision must be objectively

28

unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

4

Review under § 2254(d) is limited to the record that was before the state court. <u>Cullen v. Pinholster</u>, 563 U.S. 170, 180-181 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. <u>Id.</u> at 181-182. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." <u>Id.</u> at 182. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." <u>Frantz v. Hazey</u>, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In <u>Richter</u>, <u>supra</u>, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. <u>Richter</u>, 562 U.S. at 102.

DISCUSSION

I.    <u>Claim One: Multiple Punishment for the Same Act</u>

A.    <u>Petitioner's Allegations and Pertinent State Court Record</u>

Petitioner contends that his conviction and sentence violate Cal. Penal Code § 654, because he is being punished twice for the same act.[2] ECF No. 7 at 9-14. He alleges further that this double punishment violates the Double Jeopardy Clause. <u>Id.</u> at 15-16 (citing <u>Blockberger v. United States</u>, 284 U.S. 299 (1932)).

B.    <u>The Clearly Established Federal Law</u>

Violations of state law do not support federal habeas relief, which is available only for deprivations of federal rights. <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990).

The Double Jeopardy Clause of the Fifth Amendment, as applied to the states by the Fourteenth Amendment, prohibits three things: (1) retrial following acquittal, <u>Benton v. Maryland</u>, 395 U.S. 784 (1969); (2) re-prosecution for the same offense after conviction, <u>North Carolina v. Pearce</u>, 395 U.S. 711, 717 (1969); and (3) multiple punishments for the same offense,

---

[2] The statute provides in relevant part that "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." § 654(a).

1   Pearce, 395 U.S. at 717.  It does not, however, categorically preclude cumulative punishments

2   arising from a single prosecution.  See Missouri v. Hunter, 459 U.S. 359, 366 (1983).  For Double

3   jeopardy purposes, "the test to be applied to determine whether there are two offenses or only

4   one, is whether each provision requires proof of a fact which the other does not."  Blockberger,

5   284 U.S. at 304.

6           C.  The State Court's Ruling

7        The § 654 claim was raised on direct appeal.  Because the California Supreme Court

8   denied discretionary review, the opinion of the California Court of Appeal constitutes the last

9   reasoned decision on the merits and is the subject of habeas review in this court.  See Ylst v.

10  Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

11       The appellate court ruled as follows:

12            Defendant contends the trial court erred by failing to stay the
13            concurrent term on count 2 under section 654. We disagree.

14            "Whether a course of criminal conduct is divisible and therefore
            gives rise to more than one act within the meaning of section 654
15            depends on the intent and objective of the actor. If all of the
            offenses were incident to one objective, the defendant may be
16            punished for any one of such offenses but not for more than one."
            (Neal v. State of California (1960) 55 Cal.2d 11, 19, disapproved
17            on another point in People v. Correa (2012) 54 Cal.4th 331, 334.)
            The trial court's determination as to whether the defendant had
18            more than one intent and objective is a question of fact, and we
            review the court's ruling for substantial evidence. (People v. Kwok
19            (1998) 63 Cal.App.4th 1236, 1252-1253; People v. Green (1996)
            50 Cal.App.4th 1076, 1084-1085.)

20            As the People stated, count 2 (assault with a deadly weapon)
21            charged defendant's act of shooting the victim in the knee, whereas
            count 1 charged his act of firing the fatal shot into the victim's
22            chest. Since a shot to the knee is normally not intended to be lethal,
            but a shot to the chest is often so intended, substantial evidence
23            supports the trial court's implied determination that defendant had
            different intents and objectives in firing the two shots. Thus, the
24            court correctly found that section 654 did not apply to count 2.
            People v. Corpening (2016) 2 Cal.5th 307, on which defendant
25            relies, is inapposite because the defendant's course of conduct,
            though consisting of discrete physical acts describable as robbery
26            and carjacking, had the single intent and objective of robbery. (Id.
            at pp. 311, 315.)

27            So far as defendant claims his single intent and objective was "to
28            get the gun away from the victim in order to stop him from
            shooting [defendant]," the claim fails. First, that intent and

1
2
3

> objective would not be punishable at all, since it describes reasonable self defense. Second, assuming defendant had that intent and objective, it was satisfied before he fired any shots whatever. Thus, it does not describe his conduct as to either charged count.

4  ECF No. 21-7 at 11-12.

5       D. <u>Objective Reasonableness Under § 2254(d)</u>

6       The California Court of Appeal decided this claim exclusively on state law grounds.  Its

7  rulings on the proper application of Cal. Penal Code § 654 are binding on this court.  <u>See</u>

8  <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) (per curiam) (state court's interpretation of state law

9  is binding on federal habeas court).  Moreover, state law errors provide no cognizable basis for

10  federal habeas relief.  <u>Lewis</u>, 497 U.S. at 780.

11       Insofar as petitioner alleges a Double Jeopardy violation, it does not appear that such a

12  claim was exhausted in state court.[3]  In any event, the claim must be denied as meritless.  The

13  fatal shot to the victim's chest and the non-lethal shot to the victim's knee do not constitute the

14  same crime for Double Jeopardy purposes any more than they do for § 654 purposes.  Looking

15  only at the statutory elements of liability, <u>see</u> <u>United States v. Wolfswinkel</u>, 44 F.3d 782, 784-85

16  (9th Cir. 1995), voluntary manslaughter and assault with a deadly weapon each require proof of

17  an additional element not found in the other statute.[4]  Accordingly, Double Jeopardy is not

18  implicated.  <u>See</u> <u>Blockberger</u>, 284 U.S. at 304.  None of the federal authorities cited in the

19  petition suggest that it is categorically unconstitutional for a defendant to be convicted of a

20  homicide offense and an assault offense arising from the same incident – let alone when the

21
22
23
24
25

[3]  To exhaust state court remedies, which is a prerequisite to federal habeas relief, a petitioner must fairly present the federal constitutional basis of his claim to the highest state court.  <u>Duncan v. Henry</u>, 513 U.S. 364, 365-366 (1995) (per curiam).  Petitioner's application to the California Supreme Court, which included the § 654 issue, contains no reference to the Double Jeopardy Clause or to <u>Blockberger v. United States</u>, <u>supra</u>.  <u>See</u> ECF No. 21-8 (petition for review).  Accordingly, it appears that this claim is unexhausted.  Unexhausted claims may nonetheless be denied on the merits.  28 U.S.C. § 2254(b) (2).

26
27
28

[4]  Voluntary manslaughter requires proof of a killing upon sudden quarrel or heat of passion.  Cal. Penal Code § 192(a).  Assault with a firearm requires proof that a firearm was used to commit an assault.  Cal. Penal Code § 245(a)(2).  The element of killing is unique to Count One in this case, and use of a firearm is unique to Count Two.  Each offense thus requires proof of a fact which the other does not.  <u>See</u> <u>Blockberger</u>, 284 U.S. at 304.

1 distinct charges are based on the firing of different bullets causing distinct injuries during the

2 same incident.

3       Finally, to the extent (if any) that petitioner means to argue that the firearm enhancement

4 on Count One constitutes impermissible double punishment for the same offense, the claim is

5 defeated by the well-established principle that state legislators may, by passing sentencing

6 enhancements or otherwise, intentionally provide for multiple punishments.  <u>Hunter</u>, 459 U.S.

7 368-369 (where state legislature intended to impose multiple punishments, double jeopardy

8 principles do not apply).

9       For all these reasons, federal habeas relief is unavailable on this claim.

10     II.    <u>Claim Two: Failure to Strike Firearm Enhancement</u>

11       A.  <u>Petitioner's Allegations and Pertinent State Court Record</u>

12       Petitioner alleges that under state law, the firearm use enhancement was inapplicable and

13 should have been stricken.  ECF No. 7 at 16-17.  He claims that the governing state law creates a

14 liberty interest protected by the Due Process Clause.  <u>Id.</u> at 17-18.  Accordingly, the trial court's

15 failure to strike the enhancement violated petitioner's due process rights.

16       The record reflects that petitioner moved at sentencing that the trial court "strike or stay"

17 the firearm enhancement "in furtherance of justice" under Cal. Penal Code § 1385.  In support of

18 this request, petitioner emphasized the mitigating circumstances in his background and related to

19 the crime.[5]

20       B.  <u>The Clearly Established Federal Law</u>

21       Sentencing is governed by state law, and errors related to the application of state law do

22 not support federal habeas relief.  <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990).  A state sentencing

23 error violates a defendant's federal constitutional rights, and supports habeas relief, only where

24 the error is "so arbitrary or capricious as to constitute an independent due process violation."

25 <u>Richmond v. Lewis</u>, 506 U.S. 40, 50 (1992).

26 ////

27

28   [5] For a summary of the evidence considered at sentencing, <u>see</u> ECF No. 7 at 4-9.

1          C. The State Court's Ruling

2          Because the California Supreme Court denied discretionary review, the opinion of the

3   California Court of Appeal is reviewed for reasonableness under § 2254(d). Ortiz, 704 F.3d at

4   1034. The appellate court ruled as follows:

> Defendant contends the trial court abused its discretion under sections 1385 and 12022.5, subdivision (c), by denying his request to strike the firearm enhancement. According to defendant, his actions in using the firearm "fell outside the spirit of section 12022.5 which typically involves individuals who arm themselves and then commit crimes." We disagree. The court's ruling was well within its discretion, and defendant does not cite any apposite authority showing that there is a "spirit of section 12022.5" which his acts fell outside.
>
> When a trial court exercises its discretion in responding to a request to strike an enhancement "in the furtherance of justice," we review for abuse of discretion. (§ 1385, subd. (b); *People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977 (*Alvarez*); *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 531; *People v. Ortega* (2000) 84 Cal.App.4th 659, 666.) The party attacking the sentence must " 'clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' " (*Alvarez*, at pp. 977-978, quoting *Du, supra*, 5 Cal.App.4th at p. 831.) We will not reverse simply because reasonable people might disagree with the court's decision. (*Alvarez*, at p. 978.)
>
> Defendant fails to show that it was arbitrary or irrational for the trial court to impose the firearm enhancement in accordance with his plea agreement, which is presumed to embody legitimate sentencing objectives. So far as defendant recites the facts in the light most favorable to himself, this is insufficient to show the trial court abused its discretion by construing them otherwise. (*Alvarez, supra*, 14 Cal.4th at p. 978.) His attempt to draw analogies to decisions in which defendants were found to be outside the spirit of the three strikes law (cf. *People v. Garcia* (1999) 20 Cal.4th 490; *People v. Williams* (1998) 17 Cal.4th 148, 161) is misguided because he cites no authority holding that a court's decision under section 12022.5 must broadly consider the whole range of subjects applicable to a three strikes sentencing decision: " '[F]actors intrinsic to the [Three Strikes] scheme, such as the nature and circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects.' " (*Garcia*, at pp. 498-499, quoting *Williams*, at p. 161.) In other words, defendant's expression "outside the spirit of section 12022.5" has no foundation in the express terms of the statute or in any apposite authority.

1

2

3

4

5

6

7

In *Du, supra*, 5 Cal.App.4th 822, on which defendant relies, the issue was whether the trial court abused its discretion by granting probation where the defendant, a middle-aged female shopkeeper who killed the much younger and larger victim after confronting her over suspected shoplifting and being knocked down by her (*id*. at pp. 826-827), was convicted of voluntary manslaughter with the personal use of a firearm. As one reason why this was an "unusual case" that overcame the statutory presumption of ineligibility for probation, the trial court observed, and the appellate court agreed, that the defendant lawfully possessed the firearm for her own protection—unlike "criminals who arm themselves and go out and commit crimes," at whom "[t]he statute . . . is aimed." (*Id.* at pp. 832-833.) *Du* is procedurally and factually inapposite.

8

9

10

11

12

13

First, defendant does not challenge the trial court's finding that this was not an unusual case for purposes of granting probation. Second, neither the trial court nor the appellate court in *Du* had any occasion to consider whether it would "fall outside the spirit of section 12022.5" (a phrase not used by the trial court or the appellate court) to act as defendant did here: to seize a victim's gun, then "beat the shit out of him," *then* shoot him. That sequence of events distinguishes this case from *Du*, where the defendant acted in an honest but unreasonable belief in the need for self-defense. (*Du, supra*, 5 Cal.App.4th at pp. 827-828.)

14

Defendant has shown no abuse of discretion in the trial court's denial of his request to strike the firearm enhancement.

15

ECF No. 21-7 at 9-11.

16

### D. Objective Reasonableness Under § 2254(d)

17

The state courts' interpretation and application of California law is binding on this court,

18

and any state law error is without remedy in federal habeas.  Bradshaw, 546 U.S. at 76; Lewis,

19

497 U.S. at 780; see also Miller v. Vasquez, 868 F.2d 1116, 1118-19 (9th Cir. 1989) (questions of

20

state sentencing law are not cognizable in federal habeas).  Accordingly, petitioner's claim under

21

§ 1385 is not cognizable as a basis for relief.

22

The California Court of Appeal did not mention due process, and it does not appear that

23

petitioner exhausted a federal due process claim based on denial of his request to strike the

24

enhancement.[6]  In any event, the due process aspect of petitioner's claim must be denied as

25

meritless.  It is clear as a matter of California law that the decision whether to strike an

26

27

28

[6]  See supra, n. 2.  The petition for review, ECF No. 21-8, contains no reference to due process.  It asserted only that the trial court had abused its discretion in failing to strike the firearm enhancement punishment.  Id. at 2, 6-11.

10

1    enhancement under § 1385 is entrusted to the discretion of the trial court.  A litigant may not

2    transform a state law issue into a federal one merely by asserting a violation of due process.

3    Langford v. Day, 110 F.3d 1380, 1380 (9th Cir.), cert. denied, 522 U.S. 881 (1997).  Petitioner's

4    authorities regarding the existence of a protected liberty interest are inapposite.  See ECF No. 7 at

5    17.  The only cited Supreme Court case that deals with criminal sentencing (rather than the

6    procedural due process protections applicable in the parole and prison disciplinary contexts) is

7    Hicks v. Oklahoma, 447 U.S. 343 (1980), which reversed a harmless error finding by state courts

8    after a petitioner challenged the sentence imposed under a statute that was later found

9    unconstitutional.  The U.S. Supreme Court noted that the error could not be deemed harmless on

10   the ground that the sentence was nonetheless within the statutorily permissible range, because

11   Oklahoma law created an entitlement to sentencing by jury and the jury could well have decided

12   differently if correctly instructed.  The applicable due process principle was that a state law

13   *entitlement* to jury sentencing is protected by the Fourteenth Amendment.  Cal. Penal Code §

14   1385 does not create any entitlement, it vests the sentencing court with discretion.  Petitioner

15   therefore had no federally guaranteed right to have the firearm enhancement stricken.

16       The decision not to strike the enhancement was not "so arbitrary or capricious as to

17   constitute an independent due process violation."  Richmond, 506 U.S. at 50.  All sentencing

18   issues were fully litigated.  See ECF No. 21-3 at 114-263 (Reporter's Transcript of sentencing

19   hearing).  The trial court considered petitioner's motions and mitigation arguments, and denied

20   the § 1385 request for reasons stated on the record.  Id.  As the state appellate court noted, the

21   sentence was expressly permitted by the plea agreement and therefore cannot be considered

22   arbitrary or irrational.

23       For all these reasons, federal habeas relief is unavailable on this claim.

24                                    CONCLUSION

25       For all the reasons explained above, the state courts' denial of petitioner's claims was not

26   objectively unreasonable within the meaning of 28 U.S.C. § 2254(d).  Even without reference to

27   AEDPA standards, petitioner has not established any violation of his federal constitutional rights.

28   ////

1  Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be

2  denied.

3      These findings and recommendations are submitted to the United States District Judge

4  assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l).  Within twenty-one days

5  after being served with these findings and recommendations, any party may file written

6  objections with the court and serve a copy on all parties.  Such a document should be captioned

7  "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

8  he shall also address whether a certificate of appealability should issue and, if so, why and as to

9  which issues.  See 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed

10  within fourteen days after service of the objections.  The parties are advised that failure to file

11  objections within the specified time may waive the right to appeal the District Court's order.

12  Martinez v. Ylst, 951 F28 U.S.C. § 2254(b).  .2d 1153 (9th Cir. 1991).

13  DATED: November 19, 2024

14

15  ALLISON CLAIRE
   UNITED STATES MAGISTRATE JUDGE